IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHEILA JACKSON        :
                      :   2:19-cv-00760-JMY
   vs.                :
                      :
SOUTHEASTERN PENNSYLVANIA  :
TRANSPORTATION AUTHORITY   :

**MEMORANDUM**

**YOUNGE, J.**                                          **March 30, 2021**

**I.     BACKGROUND**

   **A.     Procedural History**

Plaintiff brought this employment discrimination action against Defendant on February 22, 2019.  (Complaint, ECF No. 1.)  Plaintiff then filed an Amended Complaint (ECF No. 14) to which the Defendant filed a Motion to Dismiss.  (ECF No. 15.)  By Order and Memorandum (ECF No. 19), this Court denied the Defendant's Motion to Dismiss.  In her response to the Defendant's Motion to Dismiss, the Plaintiff agreed to the dismissal of causes of action five through eight in the Amended Complaint.  (Resp. Mot. to Dismiss page 10, ECF No. 16.)  Therefore, only the first four causes of action asserted in the Amended Complaint remain at issue. *Id.*

The theories for relief that remain at issue are stated as follows: First Cause of Action Discrimination Under the Americans with Disabilities Act (Amended Complaint ¶¶ 116 - 131); Second Cause of Action Retaliation Under the Americans with Disabilities Act (*Id.* ¶¶ 132 – 135); Third Cause of Action Discrimination Under State Law (PHRA § 955) (*Id.* ¶¶ 136 – 139); and Fourth Cause of Action Retaliation Under State Law (PHRA s 955(d)).  (*Id.* ¶¶ 140 – 142).

**B.     Facts**

As of June 16, 2020, when SEPTA filed its motion for summary judgment, the Plaintiff was working for SEPTA as a cashier.  (Plaintiff's Resp. SMF ¶ 1.)  Plaintiff held that position as a cashier since January 2017.  *Id.*  Prior to becoming a cashier, Plaintiff worked as a bus driver for SEPTA from April 25, 2011 until December 7, 2015 when she was medically disqualified from operating a bus.  (*Id.* ¶ 2; Jackson Declaration ¶ 7-8, Ex. A., ECF No. 37-4.)  Plaintiff is a member of a union, the Local 234, and her employment with SEPTA is governed by a Collective Bargaining Agreement.  (Collective Bargaining Agreement, Ex. 5., ECF No. 32-2.)

On October 1, 2015, Plaintiff fell ill while she was at work and was taken to the hospital where she was diagnosed with three cerebral aneurysms.  (Plaintiff's Resp. SMF ¶ 5; Jackson Declaration ¶ 8.)  In October of 2015, Plaintiff had surgery to remove two of the three aneurysms.  (Plaintiff's Resp. SMF ¶ 9; Jackson Declaration ¶ 10.)  Plaintiff returned to work on December 7, 2015, with one cerebral aneurysm remaining which was scheduled to be removed in April of 2016.  (Jackson Declaration ¶¶ 13-14.)  On or about the time that Plaintiff returned to work, SEPTA's Medical Director, Dr. Jeffery Erinoff, reviewed the Plaintiff's medical records and determined that she was medically disqualified from operating a passenger bus.  (Erinoff Letter, Ex. B., ECF No. 35-5.)  Dr. Erinoff stated:

> My decision to medically disqualify Ms. Jackson was consistent with federal law, safety recommendations from the Federal Motor Carrier Safety Administration, and advisory literature.  In light of Ms. Jacksons' condition and considering advisory literature, I determined that a six-month waiting period was necessary for Ms. Jackson to ensure that she did not experience symptoms that would adversely affect her driving and thereby imperil the safety of Ms. Jackson and members of the public.

(Erinoff Declaration ¶¶ 13-14.)

Immediately after she was medically disqualified in December of 2015, Plaintiff spoke to Christopher Terranova, who worked as a Vocational Rehabilitation Specialist at SEPTA. (Jackson Declaration ¶ 16.) During their meeting, she requested an accommodation in the form of an alternative duty position. *Id.* She then took the cashiers test on December 13, 2015 so that she could qualify for a position as a cashier. *Id.* ¶¶ 16, 34. Records provided by SEPTA indicate that she was added to the list of employees who were medically disqualified and were being considered for a suitable alternate position. (Def. Reply Br., Ex. 1-4, ECF No. 38-1.) The affidavit provided by Christopher Terranova attests to the fact that the Plaintiff was being considered for an alternate position. However, individuals with more seniority were ahead of the Plaintiff on the list; therefore, there were no alternate duty positions available for Plaintiff between December of 2015 and December of 2016. (Terranova Declaration ¶¶ 8-12.)

Plaintiff's remaining cerebral aneurysm was removed in April of 2016. (Jackson Declaration ¶ 17.) Therefore, Dr. Erinoff determined that she would be eligible to apply to requalify as a bus driver in October of 2016 if she did not experience adverse symptoms during the six-month waiting period after her last cerebral aneurysm was removed. *Id.* ¶ 23. SEPTA extended Plaintiff's unpaid sick leave through October 15, 2016, so that she would not be dropped from their rolls. (Hopkins Letter dated June 13, 2015, Ex. 11, ECF NO. 32-3.)

The record shows that SEPTA established specific guidelines for requalification that required Plaintiff to make an appointment for evaluation with its Medical Department near or close to the expiration of her unpaid medical leave in October of 2016. The record also establishes that Plaintiff was placed on notice of these guidelines. (Mot. For Summary Judgment, Ex. 11, ECF No. 32-3 (Hopkins Letter dated June 13, 2016).) For example, on June 13, 2016, Jacqueline Hopkins, Esquire, SEPTA's Equal Employment Opportunity & Employee

Relations Specialist wrote Plaintiff and explained that it was "strongly recommended that Plaintiff contact SEPTA Medical to schedule an appointment with them one week prior to [the expiration of her unpaid medical leave and to] have updated records from your treating physician." *Id.*

According to SEPTA, Plaintiff did not report to its Medical Department with updated medical records from her treating physician prior to the expiration of her unpaid medical leave on October 15, 2016. (Erinoff Declaration ¶ 17, Ex 3.) Pursuant to the Collective Bargaining Agreement, once an employee has exhausted his or her collectively bargained for leave time, the employee must either be requalified for his or her position and returned to that position, or secure reassignment to a position for which the employee is medically qualified in order to stay on SEPTA's rolls. (Collective Bargaining Unit, Article V, Section 501(i)(1), Ex. 5.) Plaintiff did not requalify for her position as a bus operator before the expiration of her sick leave and so, in accordance with Article V, Section 501(i)(1) of the Collective Bargaining Agreement, Plaintiff was automatically dropped from SEPTA's rolls effective as of October 15, 2016 when she exhausted her allotted sick leave. (Collective Bargaining Agreement, Article V, Section 501(i)(1) (explaining that "Any employee whose absence due to illness exceeds the amount of sick leave to which one is entitled under this Section will be automatically dropped from Authority service and placed on the Priority Recall List in accordance with Section 504.V.")

In response to Defendant's Motion for Summary Judgment, Plaintiff avers that she attempted to make an appointment with SEPTA's medical department; however, the messages that she left were not returned. (Jackson Declaration ¶¶ 188-191.) Plaintiff essentially avers that SEPTA's medical department refused to schedule her for a requalification appointment. *Id.* In response to the Defendant's Statement of Undisputed Facts, Plaintiff claims that she visited

4

SEPTA medical division sometime around June 9, 2020 to notify them that her last cerebral aneurysm was successfully removed—presumably the June 9, 2020 dated identified was a typo, and Plaintiff was actually referring to a June 9, 2016 meeting which was well in advance of the October 2016 date when SEPTA requested that she apply to requalify for her position as a bus driver. (Resp. to SMF ¶¶ 37-39, ECF No. 35.) Plaintiff further avers that on October 21, 2016, after she was dropped from SEPTA's rolls on October 15, 2016, she attempted to contact SEPTA's Medical Department. (Resp. to SMF ¶ 39.) She produced a medical note from her physician at Jefferson dated October 27, 2016 which indicates that she was cleared to return to work. (*Id.*, Ex. G., ECF No. 37-10.)

Plaintiff was placed on a priority recall list after she was dropped or terminated from SEPTA's rolls on October 15, 2016. Based on her status on the priority recall list, she was offered a position as a cashier on December 13, 2016. (Def.'s SMF ¶ 45.) Plaintiff accepted this position and began working as a cashier in January of 2017. *Id.* ¶ 46. The Plaintiff has not, thereafter, attempted to requalify for her previous position operating a passenger bus despite being offered the opportunity to requalify. *Id.* ¶¶ 48-51.

## II.   LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-

moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* All inferences must be drawn, and all doubts resolved in favor of the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *see also Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985).

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact disputes. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials. *Id.* at 321, n.3; *see First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir. 1987). In a case where the non-moving party is the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Celotex,* 477 U.S. at 322-24. The non-moving party must adduce more than a mere scintilla of evidence in its favor to defeat the moving party's summary judgment motion. *See Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460 (3d Cir. 1989).

### III. DISCUSSION

In response to the motion for summary judgment filed by SEPTA, Plaintiff offers her Declaration and several medical records to support her argument that she was qualified to operate a passenger bus at the time of her termination in October of 2016. She avers that SEPTA ignored her attempts to requalify for that position in violation of the ADA and PHRA. She goes on to refute the sworn statements offered by key SEPTA witnesses by attesting to the fact that

they refused to even consider her for a reasonable accommodation between December of 2015 and December of 2016. In short, the Declaration offered by Plaintiff establishes that issues of material fact remain in dispute.

Under the ADA, 42 U.S.C. § 12112(a):

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

Section 955(a) of the PHRA recognized that it is an "unlawful discriminatory practice, . . ."

> [f]or any employer because of race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required . . . Notwithstanding any provision of this clause, it shall not be an unlawful employment practice for a religious corporation or association to hire or employ on the basis of sex in those certain instances where sex is a bona fide occupational qualification because of the religious beliefs, practices, or observances of the corporation or association.

The Third Circuit has recognized that the PHRA is "basically the same" as the ADA "in relevant respects and Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts." *Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375, 382 (3rd Cir. 2002). Therefore, Plaintiff's claims brought under the PHRA and ADA will be addressed in tandem and treated as one.

To establish a prima facie case of disability discrimination under the ADA and PHRA, a plaintiff must demonstrate that: (1) she is a disabled person within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) she has suffered an adverse employment decision as a result of

discrimination. *Barclay v. Amtrak*, 240 Fed. Appx. 505, 507 (3d Cir. 2007); *Oden v. SEPTA*, 137 F. Supp. 3d 778, 787 (E.D. Pa. 2015), *aff'd*, 671 F. App'x 859 (3d Cir 2016). If a plaintiff makes out a prima facie case, then the burden shifts to the defendant to proffer evidence of legitimate non-discriminatory reasons for the adverse employment action. *Id.* If the Defendant satisfies its burden, then the burden shifts back to the plaintiff to show that the defendant's explanation is pretextual. *Id.*

      **A.**     **Plaintiff Establishes that Issues of Material Fact Remain to Be Determined Under the ADA or PHRA that Arise from the Fact that She was Terminated or Dropped from SEPTA's Rolls on October 15, 2016.**

Plaintiff may proceed to jury selection on her claim that her termination from her position as a bus driver on October 15, 2016 violated the ADA and/or PHRA. In her Declaration, she alleges that SEPTA ignored her attempts to make an appointment to requalify for her position as a bus driver. (Jackson Declaration ¶¶ 188-191.) If the allegations in her Declaration are true, these facts would cast a shadow of doubt on SEPTA's legitimate justification for Plaintiff's termination to suggest that the justification may have been pretextual in nature.

SEPTA offered the terms of the Collective Bargaining Agreement with the Local 234 in conjunction with the facts of this case as its justification for terminating Plaintiff. (Mot. For Summary Judgment page 19.) The Collective Bargaining Agreement states that once an employee has exhausted his or her collectively bargained for leave time, the employee must either be requalified for his or her position and returned to that position, or secure reassignment to a position for which the employee is medically qualified in order to stay on SEPTA's rolls. (Collective Bargaining Unit, Article V, Section 501(i)(1), Ex. 5.) SEPTA argues that Plaintiff did not requalify for her position as a bus operator before the expiration of her sick leave or secure another position so, in accordance with Article V, Section 501(i)(1) of the Collective

Bargaining Agreement, Plaintiff was dropped from SEPTA's rolls effective as of October 15, 2016 when she exhausted her allotted sick leave. SEPTA argues that its proffered justification for Plaintiff's termination was a legitimate nondiscriminatory justification for the adverse employment decision. *Donald v. SEPTA*, 13-0440, 2014 U.S. Dist. LEXIS 103670 *26 (E.D. Pa. 2014) (exhaustion of sick leave pursuant to the terms of a Collective Bargaining Agreement was a legitimate reason for terminating an employee under the *McDonnell-Douglas* analysis.).

In response to SEPTA's proffered legitimate justification for her termination, Plaintiff offers her Declaration in which she avers that on May 14, 2016, her medical providers cleared her to return to work full-duty as a bus-drivers. (Jackson Declaration ¶ 19.) She goes on to aver that she provided documentation to SEPTA's medical department that complied with the directions she received from Jacqueline Hopkins. *Id.* ¶ 25. She further alleges that she attempted to make an appointment with SEPTA's medical department but was ignored. *Id.* ¶¶ 188-191. Plaintiff offers medical records indicating that she was cleared to return to work. (Resp. in Opp., Ex. F-G, ECF No. 37-9, 10.) In her response to SEPTA's statement of undisputed facts, Plaintiff avers that she visited SEPTA's medical division sometime around June 9, 2016 (assuming that June 9, 2020 was a typo). She also avers that she submitted documentation to SEPTA's medical department on October 21, 2016. *Id.* ¶¶ 37-39. She then offers a series of medical records in support of her contention that she attempted to requalify for a position operating a passenger bus. Specifically, she offers Jefferson medical notes dated May 12, 2016 that described her treatment for a cerebral aneurysm. (Resp. in Opp., Ex. F, ECF No. 37-9.) She also offers a medical note from a physician at Jefferson dated October 27, 2016 which indicates that she was cleared to return to work. (*Id.*, Ex. G., ECF No. 37-10.)

Assuming the veracity of the allegations in the Declaration offered by the Plaintiff, she is able to cast doubt on the justification offered by SEPTA as possibly pretextual in nature.

### B. Plaintiff's Claim for Failure to Offer a Reasonable Accommodation or Engage in the Interactive Process Survives SEPTA's Motion for Summary Judgment.

Plaintiff avers that starting in December of 2015 up and until she began working for SEPTA as a cashier in January of 2017, she sought an alternative duty position to no avail. She alleges that SEPTA failed to engage in the interactive process and failed to accommodate her disability by offering an alternate duty position. "[B]oth parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir. 1999). In particular, an employer is obligated to initiate an interactive process with an employee in need of accommodation. *Coleman v. Keystone Freight Corp.*, 142 Fed. Appx. 83, 86 (3d Cir. 2005). A plaintiff can show that her employer breached its duty to provide a reasonable accommodation by failing to participate in the interactive process in good faith by showing that "(1)[s]he was disabled and her employer knew it; (2) [s]he requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated." *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 741 (E.D. Pa. 2019) (citing *Capps v. Mondelez Global*, LLC, 847 F.3d 144, 157 (3d Cir 2017)); *see also Taylor v. Phoenxville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999). Failure to participate in the interactive process is not an independent claim, but rather part of the analysis of a claim of failure to accommodate. "Participation in the interactive process is simply part of the employer's duty to determine if a reasonable accommodation exists." *Whelan v. Teledyne Metalworking Prods.*, 226 Fed. Appx. 141, 147 (3d Cir. 2007).

To show failure to accommodate "[u]nder either the ADA or the Rehabilitation Act, a plaintiff can state a claim for discrimination based upon her employer's failure to accommodate her handicap by alleging facts showing (1) that the employer is subject to the statute under which the claim is brought, (2) that she is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation." *Kralik v. Durbin*, 130 F.3d 76, 78 (3d Cir. 1997). A failure to accommodate claim differs from a disability discrimination claim as "[i]n a failure to accommodate claim . . . the *McDonnell Douglas* test does not apply. Once a plaintiff alleges facts that, if proven, would show that an employer should have reasonably accommodated an employee's disability and failed to, the employer has discriminated against the employee." *Ferreri v. Mac Motors, Inc.*, 138 F. Supp. 2d 645, 651 n.1 (E.D. Pa. 2001).

In its motion for summary judgment, SEPTA argues that it acted in good faith and that any inability to place Plaintiff in an alternative duty position was caused by the fact that employees with more seniority were ahead of the Plaintiff for the vacant positions that were available. (Mot. for Summary Judgment page 22, ECF No. 32.) Therefore, it was unable to offer Plaintiff a position without violating the seniority provisions of the Collective Bargaining Agreement with the Local 234. The Collective Bargain Agreement reads in relevant part:

> When Alternate Duty Positions are to be filled from the MD List, three (3) [injured on duty] employees will be placed for every one (1) sick employee who is placed. Subject to the foregoing, the most senior [injured on duty] or sick employee on the MD List who possesses the requisite skills and is medically capable of performing the job will be offered the vacated position.

(Collective Bargaining Agreement, Article V § 504(II)(3) <u>Alternative Duty Program</u>, Ex. 5, ECF No. 32-2.)

In response to evidence offered by SEPTA in support of its argument that it had no available alternate duty positions to offer the Plaintiff between December of 2015 and December of 2016, Plaintiff argues and avers that her name was never actually added to the list of medically disqualified candidates being considered for alternate duty positions. (Opp. to Mot. for Summary Judgment page 14, ECF No. 37-1.) She argues that she was never actually considered for an alternate duty position until after she was terminated and placed on priority recall. *Id.* She then offers her declaration in which she avers that she spoke with Jacqueline Hopkins, Esquire, who confirmed that SEPTA was not considering Plaintiff's request for a reasonable accommodation. (Declaration Jackson ¶¶ 92, 95, 97, 99.) She went on to allege that when she spoke to Christopher Terranova about a reasonable accommodation, he refused to allowed her to apply for a position as a loader, blocker or porter despite the fact that she felt she was qualified for these alternate duty positions. (*Id.* ¶¶ 108-109, 141.) She averred that she was not permitted to take the test for becoming a blocker and was not being considered for a position as a cleaner. (*Id.* ¶¶ 126-129.) The only position offered by Mr. Terranova was a position as a cashier. (*Id.* ¶¶ 108-109.)

In short, Plaintiff alleges that the employees of SEPTA who were specifically in charge of helping her find a reasonable accommodation, told her she was not being considered for alternate duty positions. If her allegations are true, then Plaintiff establishes an issue of material fact around the reasonableness of SEPTA's attempt to offer an accommodation during the relevant time period.

## C. Plaintiff's Retaliation Claim Under the ADA and PHRA Survives Summary Judgment

Plaintiff's retaliation claim brought under the ADA and PHRA survives summary judgment for all of the reasons previously discussed. To prevail on a retaliation claim, a plaintiff must first establish a *prima facie* case by showing that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between her protected activity and the adverse action. *Id.* If the plaintiff succeeds in establishing a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for undertaking the action. Thereafter, the plaintiff can prevail only by establishing that she would not have suffered an adverse employment action "but for" her protected activity. *Larochelle v. Wilmac Corp.*, 769 Fed. Appx. 57, 65 (3d Cir. 2019) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)).

In terms of what could be considered an adverse employment action, a review of the record shows that Plaintiff was medically disqualified from her position operating a passenger bus based on her aneurysm diagnosis, surgeries, and associated safety risks. She was later terminated or dropped from SEPTA's rolls. Prior to being terminated, Plaintiff requested an accommodation in the form of an alternate duty position which was sufficient to trigger protection under the anti-retaliation provisions of the ADA and PHRA. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) ("Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation.") Therefore, Plaintiff's retaliation claim survives SEPTA's motion for summary judgment.

IV. **CONCLUSION**

For all of these reasons, summary judgment will be denied.

By the Court:

　/s/ John Milton Younge　
Judge John Milton Younge