## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHEILA JACKSON                          :
                                        :          No. 19-cv-0760-JMY
         vs.                            :
                                        :
SOUTHEASTERN PENNSYLVANIA               :
TRANSPORTATION AUTHORITY                :

## MEMORANDUM

**YOUNGE, J.**                                              **August 6, 2021**

## I.    BACKGROUND

### A.    Procedural History:

Plaintiff filed her Complaint in this employment discrimination action against SEPTA on

February 22, 2019.  (Complaint, ECF No. 1.)  Plaintiff then filed an Amended Complaint (ECF

No. 14) to which SEPTA filed a Motion to Dismiss.  (ECF No. 15.)  By Order and Memorandum

(ECF No. 19), this Court denied SEPTA's Motion to Dismiss.  In her response to SEPTA's

Motion to Dismiss, Plaintiff agreed to the dismissal of causes of action five through eight in the

Amended Complaint.  (Resp. Mot. to Dismiss page 10, ECF No. 16.)  Therefore, only the first

four causes of action asserted in the Amended Complaint remain at issue.  *Id.*

The theories for relief that remain at issue are stated as follows: First Cause of Action

Discrimination Under the Americans with Disabilities Act (Amended Complaint ¶¶ 116 - 131);

Second Cause of Action Retaliation Under the Americans with Disabilities Act (*Id.* ¶¶ 132 –

135); Third Cause of Action Discrimination Under State Law (PHRA § 955) (*Id.* ¶¶ 136 – 139);

and Fourth Cause of Action Retaliation Under State Law (PHRA s 955(d)).  (*Id.* ¶¶ 140 – 142).

On June 16, 2020, SEPTA filed a Motion for Summary Judgment as to all of the

remaining claims asserted in the Amended Complaint.  (Motion for Summary Judgment, ECF

No. 32.)  After this Court entered an Order that denied SEPTA's Motion for Summary Judgment

(Order, ECF No. 43), SEPTA filed a Motion for Reconsideration.  (Motion for Reconsideration,

ECF No. 44.)  Oral argument on SEPTA's Motion for Reconsideration was held on May 19,

2021.  (Transcript, ECF No. 53.)  Upon further review of the record, this Court now grants

SEPTA's Motion for Reconsideration, and it will vacate its previous Order that denied summary

judgment.  The Court is now satisfied that the entry of summary judgment in SEPTA's favor is

appropriate.

      **B.**    **Facts:**

     As of June 16, 2020, when SEPTA filed its motion for summary judgment, the Plaintiff

was working for SEPTA as a cashier.  (Pl's Resp. SMF ¶ 1.)  Plaintiff held that position as a

cashier since January 2017.  *Id.*  Prior to becoming a cashier, Plaintiff worked as a bus driver for

SEPTA from April 25, 2011 until December 7, 2015 when she was medically disqualified from

operating a bus.  (*Id.* ¶ 2; Jackson Declaration ¶ 7-8, Ex. A, ECF No. 37-4.)  Plaintiff is a

member of a union the Local 234 and her employment with SEPTA is governed by a Collective

Bargaining Agreement.  (Collective Bargaining Agreement, Ex. 5, ECF No. 32-2.)

     On October 1, 2015, Plaintiff fell ill while she was at work and was taken to the hospital

where she was diagnosed with three cerebral aneurysms.  (Pl's Resp. SMF ¶ 5; Jackson

Declaration ¶ 8.)  In October of 2015, Plaintiff had surgery to remove two of the three

aneurysms.  (Pl's Resp. SMF ¶ 9; Jackson Declaration ¶ 10.)  Plaintiff returned to work on

December 7, 2015, with one cerebral aneurysm remaining which was scheduled to be removed in

April of 2016.  (Jackson Declaration ¶¶ 13-14.)  On or about the time that Plaintiff returned to

work, SEPTA's Medical Director, Dr. Jeffery Erinoff, reviewed the Plaintiff's medical records

and determined that she was medically disqualified from operating a passenger bus.  (Pl's Resp.

SMF, Ex. B, Erninoff Letter, ECF No. 35-5.)  Dr. Erinoff stated:

> My decision to medically disqualify Ms. Jackson was consistent with federal law, safety recommendations from the Federal Motor Carrier Safety Administration, and advisory literature.  In light of Ms. Jacksons' condition and considering advisory literature, I determined that a six-month waiting period was necessary for Ms. Jackson to ensure that she did not experience symptoms that would adversely affect her driving and thereby imperil the safety of Ms. Jackson and members of the public.

(Motion for Summary Judgment, Ex. 3, Erinoff Declaration ¶¶ 13-14, ECF No. 32-2.)

Immediately after she was medically disqualified in December of 2015, Plaintiff admits

that she spoke to Christopher Terranova, who worked as a Vocational Rehabilitation Specialist at

SEPTA.  (Jackson Declaration ¶ 16.)  During their meeting, she requested an accommodation in

the form of an alternative duty position.  *Id.*  She then took the cashiers test on December 13,

2015 so that she could qualify for a position as a cashier.  *Id.* ¶¶ 16, 34.  Records provided by

SEPTA indicate that she was added to the list of employees who were medically disqualified and

were being considered for a suitable alternate position.  (Reply Brief, Ex. 1, ECF No. 38-1.)  The

affidavit provided by Christopher Terranova attests to the fact that the Plaintiff was being

considered for an alternate position.  However, individuals with more seniority were ahead of the

Plaintiff on the list; therefore, there were no alternate duty positions available for Plaintiff

between December of 2015 and December of 2016.  (Motion for Summary Judgment, Ex. 4,

Terranova Declaration ¶¶ 8-12, ECF No. 32-2.)

Plaintiff's remaining cerebral aneurysm was removed in April of 2016.  (Jackson

Declaration ¶ 17.)  Therefore, Dr. Erinoff determined that she would be eligible to apply to

requalify as a bus driver in October of 2016 if she did not experience adverse symptoms during

the six-month waiting period after her last cerebral aneurysm was removed.  *Id.* ¶ 23.  SEPTA

extended Plaintiff's unpaid sick leave through October 15, 2016, so that she would not be dropped from their rolls.  (Hopkins Letter dated June 13, 2015, Ex. 11, ECF NO. 32-3.)

The record shows that SEPTA established specific guidelines for requalification that required Plaintiff to make an appointment for evaluation with its Medical Department near or close to the expiration of her unpaid medical leave in October of 2016.  (*Id.*)  The record also establishes that Plaintiff was placed on notice of these guidelines.  (*Id.*)  For example, on June 13, 2016, Jacqueline Hopkins, Esquire, SEPTA's Equal Employment Opportunity & Employee Relations Specialist wrote the Plaintiff and explained that it was "strongly recommended that Plaintiff contact SEPTA Medical to schedule an appointment with them one week prior to [the expiration of her unpaid medical leave and to] have updated records from your treating physician." *Id.*

Plaintiff did not report to SEPTA's Medical Department with updated medical records from her treating physician prior to the expiration of her unpaid medical leave on October 15, 2016.  (Erinoff Declaration ¶ 17, Ex 3.)  Pursuant to the Collective Bargaining Agreement, once an employee has exhausted his or her collectively bargained for leave time, the employee must either be requalified for his or her position and returned to that position, or secure reassignment to a position for which the employee is medically qualified in order to stay on SEPTA's rolls. (Collective Bargaining Unit, Article V, Section 501(i)(1), Ex. 5.)  Plaintiff did not requalify for her position as a bus operator before the expiration of her sick leave and so, in accordance with Article V, Section 501(i)(1) of the Collective Bargaining Agreement, Plaintiff was automatically dropped from SEPTA's rolls effective as of October 15, 2016 when she exhausted her allotted sick leave.  (Collective Bargaining Agreement, Article V, Section 501(i)(1) (explaining that "Any employee whose absence due to illness exceeds the amount of sick leave to which one is

entitled under this Section will be automatically dropped from Authority service and placed on the Priority Recall List in accordance with Section 504.V.")

In response to Defendant's Motion for Summary Judgment, Plaintiff avers that she attempted to make an appointment with SEPTA's medical department; however, the messages that she left were not returned. (Jackson Declaration ¶¶ 188-191.) Plaintiff essentially avers that SEPTA's medical department refused to schedule her for requalification appointment. *Id.* However, she identifies no specific dates, times or persons with whom she spoke in an attempt to schedule an appointment. (Jackson Declaration.) Plaintiff comes forward with no evidence to suggest that she spoke to any union representative about her purported failed attempts to schedule an appointment with the medical department. *Id.* In response to the Defendant's Statement of Undisputed Facts, Plaintiff claims that she visited SEPTA's medical division sometime around June 9, 2020 to notify them that her last cerebral aneurysm was successfully removed—presumably the June 9, 2020 date identified was a typo, and Plaintiff was actually referring to a June 9, 2016 meeting which was well in advance of the October 2016 date when SEPTA requested that she apply to requalify for her position as a bus driver. (Resp. to SMF ¶¶ 37-39, ECF No. 35.) Plaintiff further avers that on October 21, 2016, after she was dropped from SEPTA's rolls on October 15, 2016, she attempted to contact SEPTA's Medical Department. (Resp. to SMF ¶ 39.)

Plaintiff was placed on a priority recall list after she was dropped or terminated from SEPTA's rolls on October 15, 2016. Based on her status on the priority recall list, she was offered a position as a cashier on December 13, 2016. (Def.'s SMF ¶ 45.) Plaintiff accepted this position and began working as a cashier in January of 2017. *Id.* ¶ 46. The Plaintiff has not,

thereafter, attempted to requalify for her previous position operating a passenger bus despite being offered the opportunity to requalify. *Id.* ¶¶ 48-51.

## II.    LEGAL STANDARD

### A.    Legal Standard for Reconsideration:

A federal district court has inherent authority over interlocutory orders and may modify, vacate, reconsider or set aside interlocutory orders "when it is consonant with justice to do so." *Walker by Walker v. Pearl S. Buck Found.*, No. 94-1503, 1996 U.S. Dist. LEXIS 17927, *6 (E.D. Pa. Dec. 3, 1996) (citing *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973); see also *Kurns v. Chesterton*, No. 08-2216, 2009 U.S. Dist. LEXIS 7757, *19 (E.D. Pa. Feb. 3, 2009). "The United States Court of Appeals for the Third Circuit has held that the purpose of a motion of reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Cohen v. Austin*, 869 F. Supp. 320, 321 (E.D. Pa. Nov. 25, 1994). Accordingly, a district court will grant a party's motion for reconsideration in any of three situations: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice. *Reich v. Compton*, 834 F. Supp. 753, 755 (E.D. Pa. Sep. 2, 1993).

### B.    Legal Standard for Summary Judgment:

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. An issue is "genuine"

6

only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* All inferences must be drawn, and all doubts resolved in favor of the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *see also Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985).

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact disputes. *See Celotex Corp.*, 477 U.S. at 323. To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials. *Id.* at 321, n.3; *see First Natl. Bank v. Lincoln Nat'l. Life Ins. Co.,* 824 F.2d 277, 282 (3d Cir. 1987). In a case where the non-moving party is the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Celotex,* 477 U.S. at 322-24. The non-moving party must adduce more than a mere scintilla of evidence in its favor to defeat the moving party's summary judgment motion. *See Williams v. West Chester,* 891 F.2d 458, 460 (3d Cir. 1989).

## III.   DISCUSSION

Applying the burden shifting analysis espoused in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973), Plaintiff has failed to establish an employment discrimination claim under the ADA or PHRA based on the fact that she was disqualified from operating a passenger bus between December 7, 2015 and October of 2016. Plaintiff has further failed to establish a claim based on the fact that she was terminated or dropped from SEPTA's rolls after the expiration of

her sick leave in accordance with the terms of the Collective Bargaining Agreement.  Plaintiff's

claim for failure to offer a reasonable accommodation based on the purported failure to transfer

her to an alternate duty position fails because she was unable to show that SEPTA had a vacant

alternate duty position to offer her without violating the seniority terms of the Collective

Bargaining Agreement with the Local 234.  Finally, Plaintiff's claim for retaliation under the

ADA and PHRA fails because she cannot show that SEPTA made an adverse employment

decision with discriminatory intent.

> Under the ADA, 42 U.S.C. § 12112(a):

> No covered entity shall discriminate against a qualified individual with a disability
> because of the disability of such individual in regard to job application procedures,
> the hiring, advancement, or discharge of employees, employee compensation, job
> training, and other terms, conditions, and privileges of employment.

Section 955(a) of the PHRA recognized that it is an "unlawful discriminatory practice, . . ."

> [f]or any employer because of race, color, religious creed, ancestry, age, sex,
> national origin or non-job related handicap or disability or the use of a guide or
> support animal because of blindness, deafness or physical handicap of any
> individual or independent contractor, to refuse to hire or employ or contract with,
> or to bar or to discharge from employment such individual or independent
> contractor with respect to compensation, hire, tenure, terms, conditions or
> privileges of employment or contract, if the individual or independent contractor is
> the best able and most competent to perform the services required . . .
> Notwithstanding any provision of this clause, it shall not be an unlawful
> employment practice for a religious corporation or association to hire or employ on
> the basis of sex in those certain instances where sex is a bona fide occupational
> qualification because of the religious beliefs, practices, or observances of the
> corporation or association.

> The Third Circuit has recognized that the PHRA is "basically the same" as the ADA "in

relevant respects and Pennsylvania courts . . . generally interpret the PHRA in accord with its

federal counterparts." *Rinehimer v. Cemcolift,* 292 F.3d 375, 382 (3rd Cir. 2002).  Therefore,

Plaintiff's claims brought under the PHRA and ADA will be addressed in tandem and treated as

one.

To establish a prima facie case of disability discrimination under the ADA and PHRA, a plaintiff must demonstrate that: (1) she is a disabled person within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) she has suffered an adverse employment decision as a result of discrimination. *Barclay v. Amtrak*, 240 F. App'x. 505, 507 (3d Cir. 2007); *Oden v. SEPTA*, 137 F. Supp. 3d 778, 787 (E.D. Pa. 2015), *aff'd*, 671 F. App'x 859 (3d Cir 2016).   If a plaintiff makes out a prima facie case, then the burden shifts to the defendant to proffer evidence of legitimate non-discriminatory reasons for the adverse employment action.  *Id.*  If the Defendant satisfies its burden, then the burden shifts back to the plaintiff to show that the defendant's explanation is pretextual.  *Id.*

**A.**    **Medical Disqualification and Removal of Plaintiff from Her Position as a Bus Driver:**

There is nothing in the facts of this case to indicate that SEPTA's decision to medically disqualify Plaintiff from her position as a bus operator was motivated by discriminatory intent, or that the proffered reason for disqualifying Plaintiff was a pretext for discrimination.  Plaintiff offered no evidence to establish that she was qualified to operate a passenger bus between December 7, 2015 and October 15, 2016.  She further failed to offer evidence that her medical disqualification was a pretextual excuse for an adverse employment decision on the part of SEPTA.  Therefore, she fails to establish a prima facie case of employment discrimination on these grounds.

"The Supreme Court and the Third Circuit have held that an employer may, consistent with the ADA, apply DOT's physical qualification standards to its employees."  *Clark v. SEPTA*, No. 06-4497, 2008 U.S. Dist. LEXIS 5466, *22 (E.D. Pa. 2008), *aff'd*, 306 F. App'x 796 (3d Cir. 2009).  In *Clark*, the court held that SEPTA, in particular, is permitted to rely on federal law and

related advisory criteria in determining whether its employees are qualified to operate commercial vehicles.  *Id.*  The Third Circuit reached a similar result when reviewing an employment discrimination case brought by a truck driver who was terminated based on the fact that he was using prescription medication that caused fatigue and drowsiness.  *Coleman v. Keystone Freight Corp.*, 142 F. App'x 83 (3d Cir. 2005).  In *Coleman* the Court wrote,

> [T]he District Court correctly concluded that Coleman was not a qualified individual under the ADA because Coleman failed to prove that he could meet the threshold requirement that he could perform the essential functions of his job with or without a reasonable accommodation, i.e., that he could drive a tractor trailer while taking medications that induced drowsiness and fatigue.

*Id.* at 87.

Federal law prohibits employers from allowing medically unqualified persons to operate commercial motor vehicles.  49 C.F.R. § 391.11(a).  Applicable federal regulations provide that "a person is physically qualified to drive a [commercial motor vehicle] only if that person . . . [h]as no established medical history or clinical diagnosis of . . . any. . . condition which is likely to cause loss of consciousness or any loss of ability to control a commercial motor vehicle."  49 C.F.R. § 391.41(b)(8).  The federal regulations further provide that employers may require "more stringent requirements related to safety of operation and employee safety and health."  49 C.F.R. 390.3(d).  Without question under the ADA, "qualification standards may include a requirement that an individual shall not pose a direct threat to health or safety of other individuals in the workplace."  42 U.S.C. § 12113(b), s*ee Mandichak v. Consol. Rail Corp.*, No. 94-1071, 1998 U.S. Dist. LEXIS 23005, *14 (W.D. Pa. Aug. 20, 1998) (citing 42 U.S.C. § 12113(b), "An individual is not a qualified individual with a disability if he or she poses a direct threat to the health or safety of other individuals in the workplace.").

The Federal Motor Carrier Safety Administration, whose mission is to prevent commercial motor vehicle-related fatalities, identified a 12-month waiting period for commercial drivers with surgically repaired cerebral aneurysms.[1]  Interpretive guides, including the Department of Transportation Medical Examination, A Guide to Commercial Drivers' Medical Certification, similarly provide that persons "with an untreated cerebral aneurysm are disqualified" and "[a]fter surgical treatment, they may be requalified if symptom-free for 6 months."[2]  A six-month waiting period is internationally recognized.[3]

Simply stated, a review of this evidence does not support Plaintiff's contention that the decision to medical disqualify her arose from any discriminatory intent.  Furthermore, there is nothing to suggest that her aneurysm diagnosis, related surgeries, and the associated safety risks were a pretextual excuse for discrimination.  The evidence actually suggests that between December 7, 2015 and October of 2016, Plaintiff was in fact unable to safely perform an essential function of her job, and that she was not qualified to drive a bus because of her aneurysm diagnosis, surgeries, and the associated safety risks.  Plaintiff came forward with no evidence to suggest that she was in fact qualified to operate a passenger bus during the relevant time period; therefore, any potential claim that she could advance at trial would fail on these grounds, and entry of summary judgment is appropriate.

**B.      Plaintiff Fails to Establish a Claim Under the ADA or PHRA Based on the Fact that She was Dropped from SEPTA's Rolls:**

Plaintiff has also failed to establish a claim for employment discrimination based on the fact that she was terminated on October 15, 2016 after failing to requalify for her position as a bus driver.  Plaintiff failed to establish that she suffered an adverse employment decision based on discrimination—that is that she was terminated or removed form SEPTA's rolls as a result of

discrimination.  Furthermore, she has failed to show that SEPTA's proffered justification for her removal was pretextual under the *McDonnald Douglas* analysis.

SEPTA offered the terms of the Collective Bargaining Agreement with the Local 234 in conjunction with the facts of this case as its justification for terminating Plaintiff.  The Collective Bargaining Agreement states that once an employee has exhausted his or her collectively bargained for leave time, the employee must either be requalified for his or her position and returned to that position, or secure reassignment to a position for which the employee is medically qualified in order to stay on SEPTA's rolls.  (Collective Bargaining Unit, Article V, Section 501(i)(1), Ex. 5.)  Plaintiff did not requalify for her position as a bus operator before the expiration of her sick leave or secure another position so, in accordance with Article V, Section 501(i)(1) of the Collective Bargaining Agreement, Plaintiff was dropped from SEPTA's rolls effective as of October 15, 2016 when she exhausted her allotted sick leave.[4]  Other courts located in the Eastern District have found the exhaustion of sick leave based on the terms of SEPTA's collective bargaining agreement to be a legitimate justification for termination under the *McDonnell-Douglas* framework.  *Donald v. SEPTA*, No. 13-0440, 2014 U.S. Dist. LEXIS 103670 *26 (E.D. Pa. July 29, 2014) (exhaustion of sick leave pursuant to the terms of a Collective Bargaining Agreement was a legitimate reason for terminating an employee under the *McDonnell-Douglas* analysis.).

In response to what SEPTA characterizes as a legitimate justification for her termination, Plaintiff does not even attempt to argue that it was pretextual in nature.[5]  Rather she offered a self-serving declaration in which she avers that she attempted to make an appointment with SEPTA's medical department but was ignored.  (Jackson Declaration ¶¶ 188-191.)  In her declaration, Plaintiff does not identify a specific time or date when she allegedly attempted to

make a requalification appointment with SEPTA's medical department.  (Jackson Declaration.)

Likewise, her declaration fails to identify any specific individual who she contacted in an attempt

to schedule an appointment for requalification.  Nothing indicates that she complained to a union

representative or anyone else about the medical department's purported refusal to schedule a

requalification appointment.  *Id.*  Plaintiff's vague, self-serving affidavit is insufficient to create a

genuine issue of material fact necessary to withstand summary judgment.[6]

In her response to Defendant's statement of undisputed facts, Plaintiff avers that she

visited SEPTA's medical division sometime around June 9, 2016 (assuming that June 9, 2020

was a typo).  She also avers that she submitted documentation to SEPTA's medical department

on October 21, 2016.  *Id.* ¶¶ 37-39.  She then offers a series of medical records in support of her

contention that she attempted to requalify for a position operating a passenger bus.  Specifically,

she offers Jefferson medical notes dated May 12, 2016 that described her treatment for a cerebral

aneurysm.  (Resp. in Opp., Ex. F, ECF No. 37-9.)  She also offers a medical note from a

physician at Jefferson dated October 27, 2016 which indicated that she was cleared to return to

work.  (*Id.*, Ex. G., ECF No. 37-10.)

The evidence offered by the Plaintiff in an attempt to establish her purported attempt to

requalify to operate a passenger bus is deficient.  The record establishes that Plaintiff was

provided with specific instructions on how she was expected to requalify at the conclusion of the

six-month waiting period.  These instructions included making an appointment with SEPTA's

medical department in October of 2016 at the expiration of her extended sick leave and

providing updated medical records to show that she had not experienced adverse complications

during the waiting period.  Any meeting on June 9, 2016 was too far in advance of her October

review to satisfy the requirements of the waiting period; likewise, medical records from May 12,

2016 do not establish the absence of adverse complications during the waiting period.  The only relevant note offered by Plaintiff is dated October 27, 2016—after she was terminated or dropped from SEPTA's rolls.

Noteworthy, is the fact that after being terminated or dropped from SEPTA's rolls, Plaintiff was placed on a priority recall list and offered a position as a cashier on December 13, 2016—less than two months later.  (Terranova Declaration ¶ 16, ECF No. 32-2.)  To date Plaintiff has never attempted to requalify for her position as a bus driver.

### C.   Plaintiff Did Not Establish that SEPTA Failed to Offer a Reasonable Accommodation or Engage in the Interactive Process in Good Faith:

Plaintiff avers that starting in December of 2015 up and until she began working for SEPTA as a cashier in January of 2017, she sought an alternative duty position to no avail.  She alleges that SEPTA failed to engage in the interactive process and failed to accommodate her disability by offering an alternate duty position.  "[B]oth parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith."  *Taylor v. Phoenixville Sch. Dist*., 184 F.3d 296, 312 (3d Cir. 1999).  In particular, an employer is obligated to initiate an interactive process with an employee in need of accommodation.  *Coleman*, 142 F. App'x at 86.

A plaintiff can show that her employer breached its duty to provide a reasonable accommodation by failing to participate in the interactive process in good faith by showing that "(1) [s]he was disabled and her employer knew it; (2) [s]he requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated."  *Gardner*, 410 F. Supp. 3d at 741 (citing *Capps v. Mondelez Global*, LLC, 847 F.3d 144, 157 (3d Cir 2017)); *see also Taylor*, 184 F.3d at 319-20.[7]  Failure to participate in the interactive process is not an independent claim, but rather part of the analysis

for a claim of failure to accommodate.  "Participation in the interactive process is simply part of

the employer's duty to determine if a reasonable accommodation exists."  *Whelan v. Teledyne*

*Metalworking Prods.*, 226 F. App'x. 141, 147 (3d Cir. 2007).

Plaintiff's claim based on the theory that SEPTA failed to engage in the interactive

process by failing to offer an accommodation in the nature of a transfer to an alternate duty

position fails, because she was unable to establish that she was qualified to fill any vacant funded

position at SEPTA during the relevant time period.  The claims asserted by Plaintiff in this

regard are based on the theory that SEPTA failed to transfer her to a suitable alternate duty

position once she was disqualified from operating a passenger bus.  To state a claim for failure-

to-transfer, a plaintiff must prove: "(1) that there was a vacant, funded position, (2) that the

position was at or below the level of the plaintiff's former job, and (3) that the plaintiff was

qualified to perform the essential duties of this job with reasonable accommodation."  *Donahue*

*v. Conrail*, 224 F.3d 226, 230 (3d Cir. 2000).

The first element in the test for a failure-to-transfer claim requires Plaintiff to establish

the existence of an available vacant funded position which Plaintiff failed to do in this instance.

*George v. Cnty. of Allegheny*, 581 F. App'x 138, 140 (3d Cir. 2014) (if a plaintiff does not show

the availability of a vacant funded position into which plaintiff could have been placed, then the

reasonable accommodation, failure-to transfer claim must fail).  Generally, a plaintiff's own self-

serving testimony that an employer had vacant funded positions that he or she was qualified to

perform is insufficient to carry the burden of proof.  *Barclay v. Amtrak*, 435 F. Supp. 2d 438,

477-438 (E.D. Pa. June 21, 2016); *Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir. 1996) (affirming

the grant of summary judgment and holding that "[plaintiff's] assertions in his deposition that

there were jobs he wanted to transfer to are insufficient to meet his burden of demonstrating the

presence of vacant, funded positions at his current level of seniority and pay, which he could perform"); *Sturm v. UAL Corp.*, No. 98-264, 2000 U.S. Dist. LEXIS 13331, *38 (D.N.J. Sept. 5, 2000) (granting summary judgment and stating "[plaintiff] identified several possible positions at [defendants]. As to each, however, he has failed to show either that the position exists as a permanent, funded position, and/or he has failed to show that he is physically capable of doing the job").

In its motion for summary judgment, SEPTA argues that any inability to place Plaintiff in an alternative duty position was caused by the fact that employees with more seniority were ahead of Plaintiff for the vacant positions that were available. (Motion for Summary Judgment page 22.) Therefore, it was unable to offer Plaintiff a position without violating the seniority provisions of the Collective Bargaining Agreement with the Local 234. The Collective Bargain Agreement reads in relevant part:

> When Alternate Duty Positions are to be filled from the MD List, three (3) [injured on duty] employees will be placed for every one (1) sick employee who is placed. Subject to the foregoing, the most senior [injured on duty] or sick employee on the MD List who possesses the requisite skills and is medically capable of performing the job will be offered the vacated position.

(Collective Bargaining Agreement, Article V § 504(II)(3) <u>Alternative Duty Program</u>, Ex. 5, ECF No. 32-2.)

The record as it stands in this instance does not establish that SEPTA failed to engage in the interactive process. To the contrary, the record establishes that Plaintiff met with Christopher Terranova, a manager at SEPTA, in December of 2015 immediately following her medical disqualification, to explore alternate duty positions. (Jackson Declaration ¶ 16; Terranova Declaration ¶¶ 4-13.) Mr. Terranova attests to the fact that Plaintiff's name was placed on a list of medically disqualified employees who were being considered for alternate duty positions. *Id.*

Mr. Terranova further attests to the fact that any delay in placing Plaintiff in an alternative duty position was caused by the fact that individuals with more seniority were a head of Plaintiff on the list seeking alternate duty positions. *Id.* The Plaintiff also met with SEPTA's Director of Equal Employment, Jacqueline Hopkins, Esquire regarding her request for a job reassignment. (Hopkins Declaration ¶ 3.) The record as it stands clearly establishes that representatives of SEPTA met with Plaintiff in relationship to the interactive process. *Taylor*, 184 F.3d at 317 (employers can show good faith in numerous ways, including showing that they have met with the employee who has requested an accommodation, by requesting information about the employee's condition and limitations, asking the employee what accommodation she specifically wants, showing some sign of having considered the employee's request and offer and holding discussions when requested alternatives are too burdensome.).

The Plaintiff cannot show bad faith on the part of SEPTA when the requested accommodation in the nature of a transfer to a new position would be unreasonable. It is well-established that ordinarily "a measure that violates a seniority system established in a collective bargaining agreement is not a 'reasonable accommodation,' and thus is not required by the ADA." *Kralik v. Durbin,* 130 F.3d 76, 79 (3d Cir. 1997) (finding that a request to be relieved of overtime assignments was "unreasonable because it would require the employer to violate its collective bargaining agreement and run the risks that the violation entails"); see also *US Airways, Inc. v. Barnett,* 535 U.S. 391, 404-406 (2002) (holding "that the employer's showing of violation of the rules of a seniority system is by itself ordinarily sufficient" to prove a requested accommodation is unreasonable, but permitting a plaintiff to "show that special circumstances warrant a finding that, despite the presence of a seniority system, the requested 'accommodation' is 'reasonable' on the particular facts"); *Mandichak*, 1998 U.S. Dist. LEXIS 23005, *15 ("The

duty of reasonable accommodation under the ADA does not require disabled individuals to be accommodated by sacrificing the collectively bargained, bona fide seniority rights of other employees."); *Bevan v. Cty. of Lackawanna*, No. 17-0919, 2017 U.S. Dist. LEXIS 203899, *15 (M.D. Pa. Dec. 12, 2017) (discussing reasonable accommodations under the ADA in relationship to collective bargained for seniority rights of other employees.); *Simpson v. U.S. Postal Service*, No. 07-0584, 686 F. Supp. 2d 475, 481 (D. Del. 2010) (finding that a transfer to a vacant position in violation of a collective bargaining unit was not reasonable.).

In response to evidence offered by SEPTA in support of its argument that it had no available alternate duty positions to offer the Plaintiff between December of 2015 and December of 2016, Plaintiff argues that her name was never actually added to the list of medically disqualified candidates.  (Opp. to Mot. for Summary Judgment page 14, ECF No. 37-1.) Therefore, she argues that she was never actually considered for an alternate duty position until after she was terminated and placed on priority recall.  *Id.*  She then offers her-serving declaration in which she avers that "[t]here were at least 50 SEPTA employees who were transferred to cashier positions between December 2015 and January 2017."  (Jackson Declaration ¶ 67.)  Plaintiff also alleges that "similarly situated coworkers with less seniority than me were transferred to positions such as loader, blocker, porter, and cashier between December 2015 and January 2017."  *Id.* ¶ 60.  She further avers that "[f]rom December 2015 until December 2016, Defendants pushed similarly situated employees ahead of me and refused to consider me or even acknowledge my request to be a cashier or to transfer to some other position that allowed me to perform the necessary functions of my employment."  *Id.* ¶ 37.

In summary, Plaintiff presents the argument that between December of 2015 and January 2017, her request for a reasonable accommodation was denied while similarly situated

employees with less seniority were transferred to positions such as cashier, porter, loader and blockers. *Id.* ¶¶ 36, 42, 46, 51-52, 122-123, 124. Plaintiff fails to establish a basis of knowledge for these allegations. She does not identify the names of the individuals who she purports were transferred to alternative duty positions, and she fails to identify any positions that were actually vacant or filled during the relevant time period. Her self-serving affidavit is insufficient to create a genuine issue of material fact necessary to withstand summary judgment.[8]

In short, the Declaration offered by Plaintiff was insufficient to show that she was eligible for any of the vacant alternate duty positions that were available at SEPTA. *George*, 581 F. App'x. at 140-41 (affirming summary judgment in favor of employer under analogous provisions of Rehabilitation Act of 1973 because employee failed to present "conventional evidence of a vacant position during the period at issue, such as a job posting."). Plaintiff also failed to show that she approached any representative of the Local 234 to request a waiver of the seniority provisions in the Collective Bargaining Agreement or that any such waiver was granted. "According to the Third Circuit, 'it is appropriate for the union, rather than the employer, to make the determination that the infringement is justifiable by releasing the employer from its obligation to follow the seniority provisions of the collective bargaining agreement to accommodate a qualified individual with a disability.'" *Gardner v. SEPTA*, No. 17-4476, 410 F. Supp. 3d 723, 739 (E.D. Pa. 2019) (citing *Kralik*, 130 F.3d at 83). In *Gardner*, the Court noted that the Local 234 President Willie Brown had not approved the requested transfer, and no evidence suggested that he agreed to waive the seniority provisions in the Collective Bargaining Agreement. *Id.*

**D.      Plaintiff's Retaliation Claim Under the ADA and PHRA Fails:**

Plaintiff's retaliation claim brought under the ADA and PHRA fails for all of the reasons previously discussed.  To prevail on a retaliation claim, a plaintiff must first establish a *prima facie* case by showing that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between her protected activity and the adverse action.  *Id.*  If the plaintiff succeeds in establishing a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for undertaking the action.  Thereafter, the plaintiff can prevail only by establishing that she would not have suffered an adverse employment action "but for" her protected activity.  *Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 65 (3d Cir. 2019) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)).  Retaliation claims under the ADA and PHRA are properly analyzed under the same legal standard.  *Baker v. United Defense Indus.*, 403 F. App'x 751, 754 n.4 (3d Cir. 2010) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).

In terms of what could be considered an adverse employment action, a review of the record shows that Plaintiff was medically disqualified from her position operating a passenger bus based on her aneurysm diagnosis, surgeries, and associated safety risks.  She was later terminated or dropped from SEPTA's rolls in accordance with the Collective Bargaining Agreement after she exhausted her sick leave.  Assuming arguendo that Plaintiff's request for an accommodation in the form of an alternate duty position was sufficient to trigger protection under the anti-retaliation provisions of the ADA and PHRA, her claim still fails.

Plaintiff has failed to offer evidence or argument to establish that the legitimate non-discriminatory reasons for these purported adverse employment actions were not the true reason, but were instead pretext for retaliation.  *Oden*, 137 F. Supp. 3d at 793 ("For the same reasons

discussed in [plaintiff's] disability discrimination claim, [she] fails to provide sufficient evidence

for a reasonable jury to find SEPTA's reasons for [her] termination were actually pretext for

disability discrimination.").  Plaintiff failed to establish that her medical disqualification from

operating a passenger bus and subsequent termination after exhaustion of her medical leave were

not the true reasons for these adverse employment decisions.  Furthermore, Plaintiff failed to

establish the existence of alternate a duty position for her to transfer to prior to January 2017

when she began working as a cashier.

     Plaintiff carries a high burden in proving pretext which she was unable to meet in this

case.  *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (quoting *Fuentes v. Perskie*, 32

F.3d 759, 765 (3d Cir. 1994)).  To support her discrimination and retaliation claims, Plaintiff was

required to present evidence showing "such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in [SEPTA's] proffered legitimate reasons for its action that a

reasonable factfinder could rationally find them unworthy of credence."  *Fuentes*, 32 F.3d at 765

(3d Cir. 1994).

## IV.    CONCLUSION

     For all of these reasons, SEPTA's motion for reconsideration will be granted and

summary judgment will be entered in favor of SEPTA.  Plaintiff's action will be dismissed and

an appropriate order will be entered.


              BY THE COURT:

                /s/ John Milton Younge    
              Judge John Milton Younge

---

¹ FMCSA, *About Us*, *available at* https://www.fmcsa.dot.gov/mission/about-us (explaining that the FMCSA's "primary mission is to prevent commercial motor vehicle-related fatalities and injuries."); U.S. DEPARTMENT OF TRANSPORTATION, *Federal Motor Carrier Safety Administration (FMCSA) Medical Examiner Handbook* at p. 166, *available at* https://www. fmcsa.dot.gov/sites/fmcsa.dot. gov/files/docs/mission/advisory-committees/mrb/83401/fmcsamedicalexaminerhandbook_0.pdf.

² SUMF ¶ 31; Ex. 10 Relevant Excerpts from Natalie P. Hartenbaum, *The DOT Medical Examination, A Guide to Commercial Drivers' Medical Certification* (5th ed. 2010).

³ *See* CANADIAN MEDICAL ASSOCIATION, *CMA Driver's Guide, 9th Edition*, *available at* https://www.schulich.uwo.ca/geriatrics/docs/CMA_Drivers_Guide_9th_edition.pdf, p. 85-86 (explaining that persons with symptomatic cerebral aneurysms that have not been surgically repaired are barred from driving any class of motor vehicles and have a minimum waiting period of being symptom free for six months).

⁴ Collective Bargaining Agreement, Article V, Section 501(i)(1) (explaining that "Any employee whose absence due to illness exceeds the amount of sick leave to which one is entitled under this Section will be automatically dropped from Authority service and placed on the Priority Recall List in accordance with Section 504.V."

⁵ To show pretext, Plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "To make this showing, plaintiff may introduce evidence to show '(1) that the proffered reasons had no basis in fact[;] (2) that the proffered reasons did not actually motivate [the act;] or (3) that they were insufficient to motivate discharge." *Anderson v. Lehigh Valley Hosp.*, No. 13-1986, 2015 U.S. Dist. LEXIS 40771, *35 (E.D. Pa. 2015) (citing *Petrikonis v. Wilkes-Barre Hosp. Co.*, No. 11-280, 2013 U.S. Dist. LEXIS 155487, *23 (M.D. Pa. 2013)). "The plaintiff must show 'not merely that the employer's proffered reason[s] [were] wrong, but that [they were] so plainly wrong that [they] cannot have been the employer's real reason[s]." *Id. (*citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997)). To meet this burden, a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in SEPTA's proffered legitimate reasons to lead this Court to believe a jury *could* rationally find them "unworthy of credence." *Fuentes*, 32 F.3d at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

⁶ *See, e.g.*, *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 706 (E.D. Pa. 2016), *aff'd*, 769 Fed. Appx. 57 (3d Cir. 2019) ("Self-serving affidavits may not be used by a party to create a genuine issue of material fact."); *Njos v. United States*, No. 15-0931, 2017 U.S. Dist. LEXIS, *13 (M.D. Pa. 2017) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)) ("[A] plaintiff cannot avoid summary judgment by simply relying upon a self-authored declaration that relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion

testimony.").  These types of vague and conclusory allegations are just allegations – *not* facts supported by any evidence.  *See Wragg v. Comcast Metrophone*, 18 F. Supp. 2d 524, 529 (E.D. Pa. 1998) (explaining that plaintiff's "vague and conclusory statement [was] insufficient at the summary judgment stage to sustain [p]laintiff's claim."); *McGlone v. Philadelphia Gas Works, PGW*, No. 15-3262, 2017 U.S. Dist. LEXIS 7963 *34 (E.D. Pa. 2017) (holding that "general and vague statements" in affidavit did not raise a genuine dispute of material facts).

[7]  To show failure to accommodate "[u]nder either the ADA or the Rehabilitation Act, a plaintiff can state a claim for discrimination based upon her employer's failure to accommodate her handicap by alleging facts showing (1) that the employer is subject to the statute under which the claim is brought, (2) that she is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation."  *Kralik v. Durbin*, 130 F.3d 76, 78 (3d Cir. 1997).

[8]  See Endnote 6 above for a discussion on vague and conclusory self-serving affidavits.